Jack BENNING and The Workers'
Compensation Court,
Petitioners,

v.

PENNWELL PUBLISHING CO.
and Liberty Mutual Ins. Co.,
Respondents.

No. 79980.

Supreme Court of Oklahoma.

Oct. 18, 1994.

As Corrected Nov. 1, 1994.

Anthony M. Laizure, Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, Tulsa, for petitioners.

Paul V. McGivern Jr., Ronald E. Hignight, McGivern, Scott, Gilliard, Curthoys & Robinson, Tulsa, for respondents.

OPALA, Justice.

The single issue presented on certiorari is: Was the review panel's [panel] critical conclusion of law responsive to the dispositive issue of fact formed in the evidentiary proceeding before the trial judge of the Workers' Compensation Court? *We answer in the negative.* Because of the *panel's* failure to address the pivotal question of fact by a definite ruling susceptible of judicial interpretation, the claim must be remanded for resolution to be effected by requisite findings and conclusions.[1]

## I

### THE ANATOMY OF LITIGATION

Jack Benning's [Benning, claimant, employee or worker] eight-year employment with Pennwell Publishing Company [Pennwell or employer] ended on December 1, 1987. On March 18, 1988 Benning *timely filed*[2] Form 3[3] listing an injury to his *lower back* caused by "repetitive lifting." In his *November 8, 1988* order the trial judge ruled (after a hearing) that (1) the claimant sustained lower back injury from repeated trauma suffered on the job, (2) the last date of his exposure was December 1, 1987, (3) he remains temporarily totally disabled, (4) the claimant is entitled to continuing temporary total disability payments (up to a total of 150 weeks), and (5) a determination of permanent disability must be deferred.

On October 3, 1991 Benning filed Form 9.[4] He sought medical treatment upon the alleged recurrence of his healing period and temporary total disability *brought about by a change of condition,* i.e., a neck (or cervical) injury[5] that manifested itself *after the claimant's last prior award*—November 8, 1988.[6] According to the claimant he first advised

---

1. The trial judge, who correctly perceived Benning's quest to be a § 28 reopening claim, made the required findings of fact. The review panel, on the other hand, which concluded the claimant's Form 9 plea was time-barred, failed to make a conclusion of law that would address itself specifically to the pertinent *statutory time limit for reopening proceedings.*

2. The time for filing Form 3 is prescribed by 85 O.S.1991 § 43 A. Its pertinent terms provide: "The right to claim compensation under the Workers' Compensation Act shall be forever barred unless, within two (2) years after the date of accidental injury or death, a claim for compensation is filed with the Workers' Compensation Court. Provided however, a claim may be filed within two (2) years of the last payment of any compensation or remuneration paid in lieu of compensation or medical treatment which was authorized by the employer or the insurance carrier. Provided further however, with respect to disease or injury caused by repeated trauma causally connected with employment, a claim may be filed within two (2) years of the date of last trauma or hazardous exposure...."

3. Form 3, the Employee's First Notice of Accidental Injury and Claim for Compensation, initiates the claim process.

4. Form 9, titled Motion to Set Trial, contains a line calling for "any material amendments to the Form 3." Claimant inserted in this line the following: "Nature of Injury: Herniated disc neck—Parts of body injured: neck".

5. Claimant's neck injury was believed to be a ruptured cervical disc, C6–7, on the left side of his neck. *See* Deposition of Dr. C taken on June 5, 1991, p. 21.

6. The trial transcript is clear that Benning *did not experience any complaints with his neck until after* the November 1, 1988 hearing on his Form 3 claim. *See* Trial Transcript, p. 13.

Dr. C of his neck problems [7] in 1989 but did not begin to receive treatment to the cervical area until 1991.[8] In July 1991 Benning underwent a bone fusion to correct a herniated disc in his neck. Following a February 6, 1992 hearing the trial judge ruled that the cervical complaint "relates back" to the 1987 lower back injury.[9] *This finding formed the evidentiary foundation for a § 28 proceeding.*

The employer appealed, arguing alternatively before the review panel that Benning's October 3, 1991 Form 9 quest was barred (1) because his cervical injury stems from the finally-settled 1985 back injury [10] or (2) because the claimant, who became aware of his neck problems during the two-year period for filing a claim, failed to amend his Form 3 before that interval had expired.[11]

By its July 6, 1992 decision the panel vacated the trial judge's order, ruling that the neck-injury claim was "barred" by limitations without specifying whether it applied the two-year statute for filing an original claim (§ 43 A) or that which deals with § 28

reopening claims (§ 43 C). The panel's order *is devoid of any specific findings of fact addressing Benning's quest for relief for his neck injury.* Claimant then sought appellate review. Vacating the panel's decision the Court of Appeals held that the trial judge *did not abuse his discretion in allowing the neck injury to be added.* The appellate court applied the relation-back doctrine to conclude the Form 3 amendment was timely. We granted certiorari and now vacate the Court of Appeals' decision and the panel's order, remanding the claim for further proceedings not inconsistent with today's pronouncement.

## II

## THE STANDARD OF REVIEW

■ While the *panel's review* of the trial tribunal's findings is governed by *a clear-weight-of-the-evidence test,*[12] this court, when examining that tribunal's factual resolutions, applies the *any-competent-evidence standard.*[13] If supported by competent evidence,

7. Benning described waking up in the middle of the night with his third and fourth fingers numb. He noted that half of his arm and part of his head would tingle. Because Benning initially noticed these symptoms when recovering from his last lower-back surgery, he thought they were related to his recovery [wearing braces]. Sometime after the third operation [circa 1989], the claimant started having headaches and experiencing pain in his neck. He stated that he could think of nothing, other than his work for Pennwell, to which he could relate his neck complaints. *See* Trial Transcript, pp. 19–21.

8. Dr. C's records reflect that Benning made no mention of neck pain until January 9, 1991. *See* Deposition of Dr. C dated June 5, 1991, Joint Exhibit No. 1, pp. 9–13.

9. *See* the trial judge's order dated February 21, 1992.

10. The 1987 harmful event is separate and distinct from the on-the-job injury Benning suffered in 1985. In 1985 claimant had injured his lower back. That injury, which required surgery, was settled by joint petition order for $12,325. Benning then returned to work. There is some evidence connecting the neck injury, here in issue, with the settled 1985 claim rather than with the later lower-back injury of 1987. Since the 1985 injury settlement is *final*, that claim cannot be reopened. *Bill Hodges Truck Co. v. Gillum,* Okl., 774 P.2d 1063, 1066 (1989); *Hondo Petroleum*

*Company v. Piearcy,* Okl., 376 P.2d 1012, 1015 (1962); *Capitol Well Servicing Company v. Levescy,* Okl., 371 P.2d 905, 910 (1962).

11. In support of its latter argument the employer *mistakenly relies* upon *Hambley v. Foster Wheeler Corporation,* Okl., 395 P.2d 582 (1964). In *Hambley* the claimant *knew* of *both* a leg and back injury *before he filed his Form 3 but listed only the leg injury. After* the expiration of the limitation period for filing or amending a claim, but before an award was made, Hambley sought to change his Form 3 to add the back injury. The amendment was held time-barred by the one-year limitation then in force, 85 O.S.1961 § 43. *Id.* at 583–84. Here, neither claimant nor his physician knew of the cervical spine injury when Form 3 was filed on March 18, 1988. It was *after the date of Benning's last prior award* [November 8, 1988] *that the neck injury came to manifest itself. See infra* note 25 for a discussion of *after-manifested conditions.*

12. 85 O.S.1991 § 3.6 A.

13. *Owings v. Pool Well Service,* Okl., 843 P.2d 380, 382–383 (1992); *Lacy v. Schlumberger Well Service,* Okl., 839 P.2d 157, 160 (1992); *York v. Burgess–Norton Mfg. Co.,* Okl., 803 P.2d 697, 699 (1990); *Parks v. Norman Mun. Hosp.,* Okl., 684 P.2d 548, 549 (1984); *Graves v. Safeway Stores, Inc.,* Okl., 653 P.2d 1236, 1238 (1982); *Standish Pipe Line Co. v. Kirkland,* 188 Okla. 248, 107 P.2d 1024, 1025 (1940); *Barnes v. Indian Territory*

the panel's *findings* may not be disturbed on review.[14]

## III

## WHERE THE PANEL'S FINDINGS OF FACT AND CONCLUSIONS OF LAW ARE TOO INDEFINITE AND UNCERTAIN FOR JUDICIAL INTERPRETATION OR ARE UNRESPONSIVE TO THE ISSUES FORMED IN THE HEARINGS, THEY WILL BE VACATED FOR FURTHER PROCEEDINGS

■ The Workers' Compensation Court is required to make specific findings of the ultimate facts responsive to the issues formed by the evidence as well as conclusions of law upon which its order is to be rested.[15] When these elements are not present in a panel's order or are too vague and uncertain for judicial interpretation, we will not hypothesize about the evidence upon which the trial tribunal may have relied to arrive at its decision.[16]

Here, the review panel failed to make *any factual finding* concerning the critical nexus, if any there was, of *Benning's after-manifested pathology* in the cervical spine either *to* (a) his earlier, finally settled 1985 back injury or *to* (b) his 1987 lower-back accident and, if the latter apply, then to the recurrence of the healing period. The panel's order is facially reflective of the confusion introduced into the decisional process by the employer's specious argument that the claimant can have no relief because his Form 3 would have to undergo an *untimely amendment.* This, of course, gave incorrect prima-

cy to a question of law, where in reality *that primacy was commanded by a question of fact*—*i.e.,* whether, since the last prior order claimant's condition had undergone a change causally connected to the on-the-job accident for which his compensation claim was brought. In short, the critical issue dispositive of the § 28 proceeding in this case was *not* the *amendability* of the claimant's Form 3 but the *sufficiency of his evidence* to support a § 28 reopening. The panel's *rejection* of the trial judge's findings of fact [that claimant underwent *a compensable change of condition* ] and its simultaneous *declaration* that the § 28 quest is time-barred demonstrates the confused order in which the issues to be resolved were placed.

## IV

## THE APPLICABLE STATUTE OF LIMITATION

■ It is the employer's argument that a claimant, who has filed Form 3 for an on-the-job accident but *later* undergoes a changed condition attributable to that injury, *must* amend Form 3 *within* the two-year statutory period or be forever barred from compensation. If this analysis were legally correct, it would render nugatory *all the provisions* of § 43 C which plainly *authorize a reopening claim whenever there is a changed condition* which (a) unfolds itself to the expert *after* the last prior award and (b) increases disability or brings about the recurrence of claimant's healing period. Section 43 C [17] provides a longer limitation period for reopening the claim on changed conditions than that available to the claimant under § 43 A.[18] *It is plain that the former applies to reopening*

---

*Illuminating Co.,* 170 Okla. 520, 41 P.2d 633, 635 (1935).

**14.** *Carpenter v. Douglas Aircraft Company,* Okl., 420 P.2d 911, 912 syl. 2 (1966); *Leffler v. McPherson Brothers Transport,* Okl., 396 P.2d 491, 493 (1964).

**15.** *Carpenter, supra* note 14 at 912; *Leffler, supra* note 14 at 493; *Wiles v. City of Stroud,* Okl., 395 P.2d 404, 406 (1964).

**16.** *Brookshire v. Knippers Plumbing Company,* Okl., 390 P.2d 887, 889 (1964).

**17.** The pertinent terms of 85 O.S.1991 § 43 C are:

"The jurisdiction of the Court to reopen any cause upon an application based upon a change in condition shall extend for that period of time measured by the maximum weeks that could be awarded for the particular scheduled member where the change of condition occurred, or for three hundred (300) weeks in the case of injuries to the body or injuries not otherwise scheduled under the provisions of Section 22 of this title, and unless filed within the said period of time *after the date of the last order,* shall be forever barred." [Emphasis added.]

**18.** For the pertinent terms of 85 O.S.1991 § 43 A see *supra* note 2.

*claims, while the latter governs solely the original claim's filing.* To be timely under § 43 C, an employee's § 28 reopening claim must be filed within *three hundred weeks* [19] *after the last prior order.*

Claimant's evidence is consistent *solely* with a § 28 reopening theory.[20] If Benning succeeds in ascribing the after-manifested pathology of his cervical spine to the 1987 lower-back injury,[21] his Form 9 plea is to be dealt with as a § 28 quest for additional compensation.[22] The panel's *specific finding* of fact on this threshold issue is imperative. If it be resolved in favor of the claimant, the timeliness of the reopening claim under § 43 C might be in issue. If it be found that the facts adduced do not support a compensable change of condition since the last prior order,

there will be no need for a legal conclusion on the limitations issue.

■ Although the witnesses do not agree on the exact date Benning first reported his cervical injury, it is clear that the need for medical attention to his neck first became apparent *after* the last award of 1988.[23] When an after-manifested [24] condition is shown to the tribunal's satisfaction to be medically related to an on-the-job injury and increases disability or triggers recurrence of the healing period, it affords a tenable legal basis for additional relief.[25] Here, compensability for the claimant's changed condition does not depend on the timeliness of a Form 3 amendment but rather *upon the timeliness of a § 28 reopening claim measured by § 43 C.*

19. The filing period for a § 28 reopening claim, prescribed by § 43 C, is for injuries unscheduled by 85 O.S.1991 § 22. *See supra* note 17 for the terms of § 43 C.

20. *Reynolds v. Special Indemn. Fund,* Okl., 725 P.2d 1265, 1270 (1986), teaches that if in a public-law controversy the aggrieved party advances the wrong theory or reason for reversal, the reviewing court is *free to grant corrective relief on any applicable theory chosen sua sponte—i.e.,* a theory that (a) is legally invocable to correct a *pressed* decisional error *manifested* by the record on appeal, (b) was neither advanced below nor on appeal and (c) is dispositive of the public-law controversy. *See Simpson v. Dixon,* Okl., 853 P.2d 176, 187 (1993); *First Federal Sav. and Loan v. Nath,* Okl., 839 P.2d 1336, 1343 n. 35 (1992); *In the Matter of McNeely,* Okl., 734 P.2d 1294, 1296 (1987); *Burdick v. Independent School Dist.,* Okl., 702 P.2d 48, 54 (1985); *McCracken v. City of Lawton,* Okl., 648 P.2d 18, 21 n. 11 (1982). *Reynolds* recognizes that issues in a workers' compensation proceeding are of "public interest." *Special Indemnity Fund v. Reynolds,* Okl., 188 P.2d 841, 842 (1948).

21. *See Hodges, supra* note 10 at 1068–69. There it was established that a claimant *must* produce competent evidence of a causal nexus between the compensation sought by his § 28 reopening claim and the compensable harm attributable to the accidental injury—*i.e.,* that the changed condition is a legitimate consequence of the industrial injury. *See also Deep Rock Oil Corp. v. Anthony,* 161 Okl. 128, 17 P.2d 400, 401 (1932) [syl. ¶ 1].

22. The pertinent terms of 85 O.S.1991 § 28 are: "Upon its own motion or upon the application of any party in interest on the ground of a change in condition, the Court may at any time

review any award, and, on such review, may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum and minimum provided in the Workers' Compensation Act, and *shall state its conclusions of fact* and rulings of law, and the Administrator shall immediately send to the parties a copy of the award. No such review shall effect such awards as regards any money already paid...." [Emphasis added.]

23. *Nuway Laundry Company v. Hacker,* Okl., 396 P.2d 659, 664 (1964); *Wade Lahar Construction Company v. Howell,* Okl., 376 P.2d 221, 225 (1962).

24. The hearing for the 1987 back injury was in November 1988. Because Benning was not aware of the neck injury until the next year, he could not have raised the cervical condition at the original hearing. His neck injury was hence *after-manifested. See Levescy, supra* note 10 at 906, 909.

25. A change in condition may be established by a pathology not fully ascertainable at the time of the original on-the-job injury hearing. If the changed condition was not known or knowable because it was not clinically or medically ascertainable at the time of the last prior award, a § 28 reopening claim for recurrence of the healing period and for further temporary total disability is sustainable. *See Nuway Laundry Company, supra* note 23 at 663; *Terry v. Lee C. Moore Corporation,* Okl., 382 P.2d 446, 449 (1963); *Levescy, supra* note 10 at 909; *El Reno Trailers v. House,* Okl., 372 P.2d 224, 225 (1962); *Wade Lahar Construction Company, supra* note 23 at 224; *Oklahoma Gas & Electric v. State Industrial Court,* Okl., 366 P.2d 609, 613 (1961).

## VI

### SUMMARY

Because the panel's conclusion of law is not responsive to the primary, dispositive and controlling issue of fact developed on Benning's Form 9 quest before the trial judge, the claim must be remanded for re-examination into *the presence of a causal nexus* between Benning's claimed neck condition and his *two* previous back injuries. The panel may, in its discretion, either (1) recanvass the transcribed evidence to determine if it would support a finding that the claimant's after-manifested cervical pathology *does* relate to his 1987 accident and if the changed condition *did* occasion the claimed recurrence of healing period; if its answer be in the affirmative, the panel should then measure timeliness by the applicable § 43 C time bar or (2) the panel may remand the claim to the trial judge with directions to re-inquire into the critical fact and law issues formed in the 1992 hearing.

There is incongruity between the panel's general rejection of the trial judge's findings of a compensable change in the claimant's condition and its accompanying conclusion of law which rests the rejection on an *unspecified time bar* that has *no support in the record.* In short, the panel's decision is *too vague* for judicial interpretation.[26] On certiorari previously granted,

**THE COURT OF APPEALS' OPINION AND THE THREE-JUDGE PANEL'S ORDER ARE VACATED; THE CLAIM IS REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS PRONOUNCEMENT.**

HODGES, C.J., LAVENDER, V.C.J., and OPALA, ALMA WILSON, KAUGER, SUMMERS and WATT, JJ., concur.

SIMMS and HARGRAVE, JJ., dissent.

---

26. We cannot tell whether the claim was denied because the panel (1) viewed Form 3 as no longer amendable or (2) found claimant's evidence unpersuasive.